*In the matter of the Petition of* CHARLES G. SCRAFFORD, *for a Writ of Habeas Corpus.*

1. TRIAL *in a Criminal Case, Terminated Without a Verdict; Jeopardy.* Where, after the impanneling of the jury in a criminal case, the trial is terminated without a verdict, through any unavoidable casualty such as the death of a juror, or the judge, the defendant has not been put in jeopardy, and may be again brought to trial upon the same charge.

2. TRIAL *in Such a Case, When a Mistrial; Habeas Corpus.* Where a criminal trial was commenced at one term, but not finished, nor the verdict of guilty returned until during a succeeding term, there has been at most only a mistrial, and the defendant cannot be discharged from custody on *habeas corpus.*

*Original Proceedings in Habeas Corpus.*

PETITION filed in this court on the 24th of January, 1879, on behalf of *Charles G. Scrafford,* for a writ of *habeas corpus.* The petition states in substance the following facts:

Your petitioner represents that from and since the 9th day of January, 1879, he has been, and that he now is, unlawfully restrained of his rights and privileges as a citizen of Kansas, and deprived of his liberty and personal freedom by W. D. Disbrow, the sheriff of Shawnee county, in said state; that he is by said Disbrow unlawfully confined in the common jail of said county, at the city of Topeka; and that the cause or pretense of his restraint as aforesaid, is as follows:

In December, 1877, there was filed in the district court of Shawnee county, an information against your petitioner for the alleged crime of forgery in the first degree; that on the 30th of July, 1878, your petitioner voluntarily appeared to answer to said information, and on that day gave bail for his appearance at the then next term of said district court, which was by law to convene on Monday, August 26, 1878; that on the 26th of said August the district court did convene, and your petitioner appeared before said court, in person and by counsel, and was ready to answer to said information, and to proceed to trial thereon, but at the request of the county attorney, and the attorney general, representing the state of Kansas, said action or proceeding was postponed to a future day in said August term of the court, to wit, to Monday, September 16, 1878; that on the 16th of September, your

*In re* Scrafford, *Petitioner, &c.*

petitioner again appeared in person, and by counsel, when the cause or proceeding against him was again, at the instance of the prosecution, and against the wishes of your petitioner, postponed until Thursday, December 12, 1878 — it having been previously ordered by the court that an adjourned session of the said August term thereof should be held on said 12th of December; that on the 12th of December, your petitioner again appeared before the court in person, and by counsel, and announced himself ready for trial, but the attorney general not being prepared to proceed on the part of the prosecution, the cause was further, and at the instance of the attorney general, postponed until Wednesday, December 18th, 1878, and on the day last named it was again postponed, at the request of the attorney general, until the next day, Thursday, December 19th, on which day the county attorney of Shawnee county, on leave of the court, filed an amended information in the same action or proceeding hereinbefore mentioned, which information contained sixty-nine separate counts, each of which charged the crime of forgery in the first degree — whereas the original information filed against your petitioner contained only six counts. On the 19th of December, your petitioner, neither asking nor desiring any delay, pleaded "Not guilty" to the above amended information, and announced himself ready to proceed to trial thereon. A jury was thereupon impanneled in said cause, which jury were sworn on the 20th of December, 1878, and at the aforesaid August term of the district court, and the trial of the cause was commenced. Testimony on the part of the prosecution was offered and given on the 20th, 21st, 23d, 24th, 26th, 27th, 28th and 30th of December; and on the part of this petitioner, on the 30th and 31st of December, 1878, and on the 2d of January, 1879. Rebutting testimony was offered and given on the part of the prosecution on the 3d of January, 1879. On the morning of the 4th of said January (which was Saturday), the court gave its instructions to the jury, and thereafter on that day, A. M. F. Randolph, one of the attorneys on the part of the State, and W. D. Webb and John Guthrie, on the part of this petitioner, respectively addressed the jury.— Mr. Guthrie concluding his argument between five and six o'clock in the afternoon of that day, and no further proceedings were had in the cause on said day, except that the court, after the conclusion of Mr. Guthrie's argument, gave the usual admonition to the jury, and directed them " to return again into court

on Monday morning, January 6th, 1879, at the hour of nine o'clock, to hear the further arguments of counsel in said cause."

And your petitioner further shows to the court that Monday, the 6th day of January, 1879, was the day appointed by statute for the commencement of the regular January term, 1879, of the Shawnee district court, and that the court did convene at nine o'clock A. M. of that day, as of and for the regular January term thereof; that after the court had convened, and been duly opened as of and for the said January term, and after an order had been made and entered by the court regarding the jurors and witnesses summoned to appear on that day, at said January term, the court directed the clerk thereof to call the jury which had been impanneled and sworn on the 20th of December, 1878, at and during the August term of the court, to try the issue joined between the state of Kansas and this petitioner, upon the amended information filed against him as hereinbefore stated; that thereupon came and answered the same men who had composed the jury which had been in session as such before said district court every day (Sundays and holidays excepted) from Friday, the 20th of December, 1878, to Saturday, the 4th of January, 1879, both days inclusive, and who were in session as such jury, and without having found or returned any verdict in said cause, and without having announced their inability to agree upon a verdict therein at the hour at which the court adjourned on the 4th day of January, and said persons took their seats as a jury, and thereupon, by direction of the court, argument of counsel was had and made before said persons as in the trial of an action, and in form as if the trial of this petitioner upon the amended information had not been concluded. On said 6th of January, before and in the presence of the district court, and while the court was in session as of the said January term thereof, George R. Peck, for and on the part of the prosecution, and John Martin, for and on the part of this petitioner, respectively addressed the persons so sitting as a jury; and the persons so sitting as a jury in the presence of said district court, while the court was sitting as of said January term, were addressed by W. C. Webb, on the part of this petitioner, on the 7th of said January, and by Willard Davis, attorney general, on the part of the prosecution, on the 8th of said January. On the 9th day of January, being the fourth day of said January term, 1879, and while the court was in session as of the January term, said persons came into

47—21 KAS.

court, and delivered to the court a pretended verdict as and for their verdict as a jury in the cause or prosecution against this petitioner, which verdict was in substance that your petitioner was "guilty as charged in the information," to the reception of which finding or verdict this petitioner then and there duly objected, and to the overruling of his said objection, he duly excepted. And this petitioner further shows, that the district court, so sitting as of and for the January term thereof, received said pretended finding or verdict, over the objection and exception of your petitioner, and therefore, on said 9th day of January, *ordered,* that your petitioner be committed to the custody of the sheriff of Shawnee county; and thereupon the said W. D. Disbrow, sheriff of said county, forcibly and unlawfully, and without any pretended warrant or authority, except the order of the court hereinbefore mentioned, arrested your petitioner, and confined him in the common jail of said Shawnee county as aforesaid, where he now is.

And your petitioner shows and represents that he has been advised and believes that the said trial which commenced on the 20th of December, 1878, at the August term, 1878, of said district court, was brought to a close on Saturday, the 4th day of January, 1879, that being the last day of the August term; that by such trial and proceedings your petitioner's rights and liberty were put in jeopardy; that the failure or omission of the court, during the existence of said August term, for some valid cause (if any such there was) to arrest the proceedings and discharge the jury before the adjournment of the court on said day, (there being no verdict then or theretofore returned against your petitioner,) operated as a verdict of not guilty, and entitles your petitioner to be discharged without day; that the district court, at the January term thereof, begun and held as aforesaid, had no power, authority, or jurisdiction, to proceed with the trial of said cause, nor during the sitting of said court as of the January term; that all proceedings had or pretended to be had in said cause during the January term, 1879, on the 6th, 7th, 8th and 9th days of January, 1879, were and are wholly illegal and void; that the order of the court so made on the 9th day of January, was and is illegal for want of jurisdiction and power in the court to make the same.

A duly-certified transcript of all the above-mentioned proceedings in the district court of Shawnee county, relating to the aforesaid action begun and prosecuted therein against the petitioner, was attached to and made a part of his peti-

tion. The common prayer for the issuance of a writ of *habeas corpus* in behalf of the petitioner, was also appended to the petition. Upon the foregoing petition, the writ prayed for was issued by the court, made returnable on Monday, February 3d, 1879, and was duly served upon the said Disbrow, sheriff, to which he made a return, and stated as follows:

"I hold the within-named Charles G. Scrafford in my custody, as sheriff of Shawnee county, Kansas, by virtue and under the authority of an order of the district court of Shawnee county, made in open court, and entered by the clerk thereof upon the journal of the court, a duly-certified copy of which is hereunto attached and made a part of this return; and I hereby produce the said Charles G. Scrafford, and have him now in court, as required by said writ."

A copy of the verdict of the jury, contained in the sheriff's return to this writ, and of the proceedings upon the reception thereof, and of the order of the court thereon, is as follows:

(*Court, and Title.*) "We, the jury, find the defendant, Charles G. Scrafford, guilty, as charged in the information.

"C. G. CLELAND, *Foreman.*

"To the reception of which verdict, or any verdict from said jury, the said defendant then and there, by his said counsel, objected, which objection was overruled, and said verdict was received — to all of which said defendant, by his counsel, then and there duly excepted; and thereupon, the said defendant, by his counsel, gave notice, in open court, of a motion for a new trial in this cause, and also notice of a motion for arrest of judgment herein; and thereupon, the court ordered that the said defendant, Charles G. Scrafford, be committed to the custody of the sheriff of this county."

The amended information, filed as above mentioned, was not only against Charles G. Scrafford, but was also against Samuel Lappin, [treasurer of the state of Kansas, from January 11, 1875, until his resignation, December 20, 1875.] The original information for forgery against Lappin was filed in the district court of Shawnee county, April 6, 1876, and was against Samuel Lappin, *alias* S. Whitcomb, *alias* Thomas Manford, *alias* Richard Milner, *alias* J. S. Kibby, *alias* David J. Parkhurst. The original information for forgery against Scrafford, was filed in the district court of said county, December 22, 1877, and was against Charles G. Scrafford, *alias* S. Whitcomb, *alias* Thomas Manford,

*alias* Richard Milner, *alias* J. S. Kibby, *alias* David J. Parkhurst. The amended information against both Lappin and Scrafford consisted of sixty-nine counts for forgery in the first degree, forty-one counts thereof being drawn under § 115 of ch. 31 of the General Statutes, and twenty-eight counts thereof being drawn under § 134 of said chapter. The forty-one counts respectively charged that the defendants, Lappin and Scrafford, did, at the county of Shawnee, in the state of Kansas, in September, October and November, 1875, unlawfully and feloniously forge and counterfeit, and cause and procure to be forged and counterfeited, certain bonds, with coupons for interest thereunto attached, purporting to have been issued by certain school districts in the counties of Mitchell, Jewell, Republic, and Osborne, in the state of Kansas, forty-one bonds described as follows:

| County. | No. dist. | No. bonds. | Am't of bonds. | Date of issue. | When payable. | Where payable. |
|---|---|---|---|---|---|---|
| Mitchell | 1 | 1 | $1,500 | May 21, '74 | 1881 | State Treasury. |
| Mitchell | 12 | 1 | 700 | June 3, '75 | 1884 | State Treasury. |
| Mitchell | 12 | 2 | 1,000 | June 3, '75 | 1886 | State Treasury. |
| Mitchell | 49 | 1 | 1,000 | May 31, '75 | 1882 | State Treasury. |
| Mitchell | 60 | 1 | 1,200 | June 1, '75 | 1881 | State Treasury. |
| Jewell | 15 | 1 | 1,300 | May 29, '75 | 1885 | State Treasury. |
| Jewell | 27 | 1 | 900 | April 25, '75 | 1880 | County Treasury. |
| Jewell | 34 | 1 | 500 | June 1, '75 | 1880 | Topeka B'k & Sav. Inst. |
| Jewell | 34 | 2 | 500 | June 1, '75 | 1881 | Topeka B'k & Sav. Inst. |
| Jewell | 34 | 3 | 500 | June 1, '75 | 1882 | Topeka B'k & Sav. Inst. |
| Jewell | 75 | 1 | 1,600 | May 20, '74 | 1882 | State Treasury. |
| Jewell | 83 | 1 | 400 | April 20, '74 | 1878 | First Nat. B'k, K. City. |
| Jewell | 83 | 2 | 400 | April 20, '74 | 1879 | First Nat. B'k, K. City. |
| Jewell | 83 | 3 | 400 | April 20, '74 | 1880 | First Nat. B'k, K. City. |
| Jewell | 83 | 4 | 500 | April 20, '74 | 1881 | First Nat. B'k, K. City. |
| Republic | 5 | 1 | 600 | Mar. 18, '74 | 1878 | City of Topeka. |
| Republic | 5 | 2 | 600 | Mar. 18, '74 | 1879 | City of Topeka. |
| Republic | 5 | 3 | 600 | Mar. 18, '74 | 1880 | City of Topeka. |
| Republic | 13 | 1 | 500 | June 1, '75 | 1880 | Topeka Bank. |
| Republic | 13 | 2 | 500 | June 1, '75 | 1881 | Topeka Bank. |
| Republic | 13 | 3 | 500 | June 1, '75 | 1882 | Topeka Bank. |
| Republic | 13 | 4 | 500 | June 1, '75 | 1883 | Topeka Bank. |
| Republic | 49 | 1 | 625 | Mar. 1, '74 | 1880 | County Treas. Office. |
| Republic | 49 | 2 | 625 | Mar. 1, '74 | 1881 | County Treas. Office. |
| Republic | 94 | 1 | 400 | June 10, '74 | 1880 | County Treas. Office. |
| Republic | 94 | 2 | 400 | June 10, '74 | 1881 | County Treas. Office. |
| Republic | 94 | 3 | 400 | June 10, '74 | 1882 | County Treas. Office. |
| Republic | 94 | 4 | 400 | June 10, '74 | 1883 | County Treas. Office. |
| Osborne | 12 | 1 | 600 | June 1, '75 | 1878 | State Treasury. |
| Osborne | 12 | 2 | 600 | June 1, '75 | 1879 | State Treasury. |
| Osborne | 12 | 3 | 600 | June 1, '75 | 1880 | State Treasury. |
| Osborne | 16 | 1 | 500 | Mar. 15, '75 | 1881 | County Treasury. |
| Osborne | 16 | 2 | 500 | Mar. 15, '75 | 1882 | County Treasury. |
| Osborne | 16 | 3 | 500 | Mar. 15, '75 | 1883 | County Treasury. |
| Osborne | 27 | 1 | 500 | May 26, '75 | 1880 | State Treasury. |
| Osborne | 27 | 2 | 500 | May 26, '75 | 1881 | State Treasury. |
| Osborne | 27 | 3 | 500 | May 26, '75 | 1882 | State Treasury. |
| Osborne | 27 | 4 | 500 | May 26, '75 | 1883 | State Treasury. |
| Osborne | 32 | 1 | 800 | May 28, '75 | 1880 | State Treasury. |
| Osborne | 39 | 1 | 1,200 | June 2, '75 | 1885 | County Treasury. |
| Osborne | 43 | 1 | 1,200 | May 27, '74 | 1884 | County Treasury. |

The twenty-eight counts respectively charged that the defendants, Lappin and Scrafford, did, at the county of Shawnee, in the state of Kansas, in September, October, and November, 1875, unlawfully and feloniously pass, utter and publish as true, upon, with and to the board of commissioners for the management and investment of the school funds of the state of Kansas, for certain sums of money respectively belonging to the permanent and the annual school funds of said state, twenty-eight of the above-described bonds, purporting to have been issued by school districts in the counties of Mitchell, Jewell and Republic, the said Samuel Lappin and Charles G. Scrafford then and there well knowing each and all of said bonds and coupons, at the time they so fraudulently and feloniously passed, uttered and published the same, to be forged and counterfeited; and each count charged that the forgery therein set forth was by the said defendants committed, with the intent then and there and thereby to cheat and defraud the state of Kansas. Each count also stated in conclusion, "that the said Charles G. Scrafford, after committing the offense mentioned and set forth in the above and foregoing count, did, on or about the 20th day of December, 1875, leave and absent himself from the state of Kansas, and that he remained absent therefrom until about the 30th day of July, 1878; and that during the whole time, he, the said Charles G. Scrafford, was so absent from the state of Kansas as aforesaid, he was a fugitive from justice; and that the said Samuel Lappin did, on or about the 12th day of July, 1876, leave and absent himself from the state of Kansas, and that ever since that time the said Samuel Lappin has been, and that he now is, a fugitive from justice."

After the evidence in the foregoing cause had been closed, January 3, 1879, the state asked and obtained leave of the court to enter a *nolle prosequi* therein, as to the 27th, 28th, 29th, 30th, 31st, 32d, 33d, 34th, 35th, 36th, 37th, 38th, 59th, 60th, 61st, 62d, 63d, 64th, 65th, 66th, 67th, 68th and 69th counts of the amended information, which counts, twenty-three in number, embraced the bonds of Mitchell and Os-

borne counties. The verdict herein was rendered upon the remaining forty-six counts of the amended information.

Counsel appearing for Scrafford in this court, were *W. C. Webb, John Martin* and *John Guthrie.* Counsel for the state, were *Willard Davis,* attorney general, *George R. Peck, A. M. F. Randolph,* and *G. C. West.* The case was argued orally by Messrs. *Webb* and *Martin,* for the petitioner, and by Messrs. *Davis, Peck,* and *Randolph,* for The State. February 5, 1879, the opinion herein was filed.

*W. C. Webb,* for petitioner:

Two questions are presented by the petition and record: 1st. Can the district court legally continue or prolong the August term so as to run such term into the time during which by statute the January term must be held? The constitution provides that "District courts shall be held at *such times* and places as may be provided by law." (Art. 3, §5.) The statute provides for three terms of the district court in each year in Shawnee county. It designates the "time," or day on which each term shall commence. The fourth Monday of August, 1878, was the day "provided by law" for one term, and the first Monday (being the 6th day) of January, 1879, was the day "provided by law" for the next succeeding term. Under the decisions heretofore made, (and especially that in the *Montgomery case,* 8 Kas. 351,) it is conceded that the August term of the Shawnee district court could legally continue, and by adjournments from time to time be kept alive, beyond the day fixed by law for holding the district court in *other* counties of the same district, down to and including the last judicial day next before the day fixed (or "time provided") by law for holding such court in the same (Shawnee) county. But we say, that when *the day* "provided by law" for the commencement of the January term 1879 arrived, the August term ceased. It was at an end. It died by operation of law, on Saturday, January 4th, and the court was powerless to prevent its death, or give it new or continued life. It could not by any act,

order, or decision, upon any occasion, for any purpose, or because of any supposed necessity, continue the August term a single instant into Monday, January 6th. ( *Bush v. Doy,* 1 Kas. 86.) The trial of Scrafford commenced on the 20th of December. He was present and ready for trial at the commencement of the term, in August. The trial was postponed and delayed at the instance of the prosecution, and not at the petitioner's instance. The petitioner practiced no fraud on the law, nor on the court. That the trial was not concluded on or before Saturday, January 4th, was not the fault of the petitioner. If the court could continue the August term into the January term, it could prolong such August term into the May term, and so on, so long as the judge should live or be in office — thus overriding every statutory and constitutional provision regarding the "times" for holding courts, and the "terms" at which certain matters are to be performed. Bills of exception may be settled, "but not beyond the term;" ( Civil Code, § 300.) In some cases the application for a new trial must be made at the trial term, and within three days after verdict; ( Civil Code, § 308;) in others, the application may be made "after the term" at which the trial was had; (§ 310.) Some actions are "triable at the first term" after the issues are made up, and some may be tried at "the term" during which the issues are made up; ( Civil Code, § 315, and amendments of 1870 and 1871; 18 Kas. 145.) Clearly, if a jury impanneled at the August term, and sitting ten days during such term, can sit into and during four days of the January term, and then return a verdict, (the August term being prolonged for such purpose,) then the court can continue one term into another for the purpose of settling a bill of exceptions; and yet this court in the *Bohan case,* 19 Kas. 28, 47, expressly decided that such proceedings could not legally be had. The court in that case used this language:

"The alleged errors set forth in the third bill of exceptions, filed on the 5th of June, that day being *after the commencement of the May term* of the court, and *after the February term had expired by law,* are not legally here for our deter-

mination. 'A bill of exceptions filed out of term, is no part of the record.'" (19 Kas. 48.)

Judgments in civil actions are liens on the real estate of the debtor from the first day of *the term* at which the judgment was rendered; (Civil Code, § 419.) Suppose the trial of a civil action had been commenced before a jury on the 20th of December, during the August term, and such jury had returned a verdict on the 9th of January, (four days after the day "provided by law" for the commencement of the January term,) and judgment were pronounced on that verdict: as of what time would it be lien — the first day of the January term, or the first day of the August term? In other words, at *what time* (in such a case) was the "trial" had? If at the August term, it was not completed, and was therefore a nullity. If at the January term, there would be the anomalous proceeding of a jury sitting and returning a verdict at a term of the court during which they were neither impanneled nor sworn. The opinion of this court in the case of *Butler v. McMillen,* 13 Kas. 389 to 392, is most instructive. In that case, a trial by the court was commenced at one term, and finished at a subsequent term. This court held that such proceeding was illegal. True, the two terms, in that case, did not follow each other, without any intervening days or times, as they did in the Scrafford case; but the court laid the greatest stress upon the fact that *the trial* was not concluded *at the term* at which it was commenced. It used this language:

"The whole force of the argument in favor of the statutory requirement that exceptions must be reduced to writing *at the term,* is against the propriety of a trial in the manner this was tried." . . . "At common law, . . . the idea seemed to be, that a trial was a continuous proceeding from its opening to its close. . . . A *criminal trial,* once commenced, must be carried through to its close, *and a failure to finish it*" [quære — *during the term?*] "was equivalent to *an acquittal of the defendant.* Jurors were and are summoned *only for the term.* Process for witnesses loses its force at *the end of the term.* Exceptions must be reduced to writing *at the term.* . . . The court may break up a trial at any

time, and continue the case: but at *the next term* the trial must be recommenced, and cannot be taken up where it was left off. 'A final adjournment of the court *for the term* operates as a legal discharge of the jury, and terminates its functions as such.'" (13 Kas. 391, 392.)

2. It seems clear, therefore, that the district court erred in continuing the trial into the January term, and that all proceedings had on the 6th, 7th, 8th and 9th days of January were *coram non judice*, and void. And the second question is, What was the effect of continuing the trial over into and finishing it during the January term? Was it a mistrial only, or did it terminate the case, and operate as an acquittal of the petitioner? We contend that it was and is, in judgment of law, an acquittal. The petitioner was charged by information with having committed a felony. He was placed upon trial at the August term. The court had jurisdiction of the offense charged, and of the person of the accused. The jury were duly impanneled and sworn. *The accused was therefore in jeopardy.* It was not his fault, nor by his procurement, that the trial was not concluded during the term at which it was commenced. The prosecution took no measures to arrest the proceedings for want of time to finish the trial, by asking leave to withdraw a juror, or otherwise, and continue the case to the next term. There was no "act of God," no "overruling necessity," preventing a completion of the trial before the close of the August term. In these and a few other cases, a retrial may be had at a subsequent term, and the accused cannot successfully plead a former mistrial in bar. We know that Judge Cooley (Const. Lim. 327) says, that "if the term of the court as fixed by law comes to an end before the trial is finished, the accused may be again put upon trial upon the same facts," etc., citing the cases of *State v. Brooks*, 3 Humph. 70; *State v. Battle*, 7 Ala. 259; *Mahala v. State*, 10 Yerg. 532; *State v. Spier*, 1 Dev. 491; and *Wright v. The State*, 5 Ind. 290. But unfortunately for the position claimed, not one of the cases cited sustains the view set forth by Cooley, while two of them, *Wright v. The State*, 5 Ind. 290, and

*State v. Spier*, 1 Dev. 491, are directly against the proposition asserted by Cooley; and so are the cases reported in 4 Ala. 173, and 48 Cal. 323. A careful reading of the cases in which the question has arisen, whether a criminal ·trial, not ·completed at the term at which it was begun for want of time. merely, is simply a mistrial, or is equivalent to an ac-·quittal, will, we think, show it to be well settled, that, as the ·accused was by such trial placed once in jeopardy, he cannot be again tried for the same offense. We think the district court erred in continuing the trial beyond the 4th day of January, and in receiving the verdict on the 9th of January,' (during the January term,) and in denying the petitioner's motion to be discharged, and in ordering him into custody. The petitioner being illegally restrained of his liberty, should be discharged by order of this court.

The opinion of the court was delivered by

Brewer, J.: The petitioner claims that by the close of the August term and the commencement of the January term, before the case had been finally submitted to the jury, the power of the court to proceed further in the trial ceased, and that all proceedings had in the case subsequent to the commencement of the January term, were illegal and void; and secondly, that though such subsequent proceedings were illegal and void, yet that inasmuch as at the August term, a jury had been impanneled and sworn and testimony received, the defendant had been placed in jeopardy, and could not, under the constitution, be placed upon trial again under the present charge; and as a conclusion therefrom, that he is illegally restrained of his liberty, and entitled to a discharge.

Upon the first question we express no opinion. The question is not free from difficulty, but in the view we have taken of the other matters, its decision is unnecessary. If the court has power to prolong a trial through or into two successive terms, then of course the verdict was properly received, and is conclusive until set aside by motion, for errors occurring on the trial. On the other hand, if the court has no such

power, then the trial was terminated on Saturday, January 4th, 1879, by the close of the term. It is the case of a trial unfinished, not by the choice of the state, nor by the action of the court, but necessarily by the termination of the term at which the trial is pending. In such case the party has not been put in jeopardy, and may be again brought to trial upon the same charge. It is simply a mistrial — as if a juror or the judge should die pending the trial. The failure to complete the trial is not a matter of choice, but of necessity, and the law in such cases allows a second trial.

So that in either view which may be taken of the first question, the petitioner is in custody upon a commitment issued by a court of competent jurisdiction, upon an information, and therefore, under our *habeas corpus* act, not entitled to a discharge. (*Ex parte Phillips,* 7 Kas. 48.)

Let the petitioner be remanded into custody.

All the Justices concurring.*