THE STATE OF KANSAS, *Appellee,* v. CORNELIUS TRACY, *Appellant.*

No. 18,146.

SYLLABUS BY THE COURT.

1. INTOXICATING LIQUORS—*Sales—Partnership—Instruction.* An instruction in substance that if the jury believed from the evidence beyond a reasonable doubt that defendant furnished the financial credit on which the business was founded, stored the liquors in a place kept by him which was charged with being a nuisance, assisted in caring for the liquors and received a share of the profits of the business he was a partner and might be convicted the same as though he had personally made the sales, is held to state sufficiently the law of partnership as applied to the evidence, in view of the failure of defendant to request a more definite instruction upon the question.

2. CRIMINAL LAW — *Jury Impaneled — Trial Postponed—Error.* After the trial of a prosecution under the prohibitory liquor law had begun and several witnesses for the state had testified the trial was postponed and the jury were permitted to separate for thirty-three days, when the trial was resumed over the defendant's objections, and other witnesses for the prosecution and for the defendant testified. *Held,* that the postponement of the trial for such a length of time was an abuse of discretion resulting in a mistrial.

Appeal from Cloud district court. Opinion filed November 9, 1912. Reversed.

*Isaac A. Rigby,* of Concordia, *T. F. Garver,* and *R. D. Garver,* both of Topeka, for the appellant.

*John S. Dawson,* attorney-general, *A. L. Wilmoth,* county attorney, and *F. P. Lindsay,* of Topeka, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This is an appeal from a conviction in the district court of Cloud county for a violation of the prohibitory law. The information was filed June 28,

1911, charging the appellant in the first five counts with illegal sales, in the sixth and seventh counts with taking orders for the sale of intoxicating liquors, and in the eighth count with keeping and maintaining a liquor nuisance. October 9, 1911, a jury was impaneled and the trial of the case begun, the trial lasting until the morning of October 11, during which time the state called and examined twelve witnesses. On the morning of October 11, owing to the serious illness of one of the county attorney's children, on his application the further trial of the case was adjourned over until November 13, 1911. The adjournment was made to that date because the regular term of court commenced in Republic county on October 16. This was done over the objections of the appellant. When the adjournment was taken and the jury allowed to separate the court admonished them as follows:

"Gentlemen of the Jury, on account of severe illness in the county attorney's family, I am going to excuse you until 10:30 o'clock A. M. of the 13th day of November. Now during the time you are separated I want you to be very careful not to discuss this case with any one, do not allow the members of your family to talk to you about it, do not discuss it among yourselves, do not allow any one to talk to you about it, and in view of the peculiar circumstances I am going to ask you as you go about your business, should you hear any one discussing this case, to walk away, and do your best not to hear any talk that may arise over it, and should any one persist in talking or trying to talk to you about it, let me know."

On November 13 the jury and parties returned as before, at which time the appellant made formal objection to further proceeding with the trial of the case before that jury. This objection was overruled and the trial was resumed; the state introduced four additional witnesses, and the appellant introduced testimony, including that of himself, in which he denied the charges against him. On November 16 the jury re-

The State v. Tracy.

turned a verdict finding the appellant guilty on the first and eighth counts of the information, and not guilty on the other six.  A motion for a new trial was over-ruled and judgment entered against the appellant on the verdict, sentencing him to imprisonment in the county jail of Cloud county for ninety days and to the payment of a fine of $200 on the first count, and to imprisonment in the county jail for six months and to pay a fine of $200 on the eighth count of the information.

Three assignments of error are relied upon for reversal: (1) It is claimed that the court failed to explain by proper instructions what is meant by a "partnership." The court gave, among others, the following instruction:

"Some evidence has been offered to the effect that a witness, Bone Dykes, and the defendant, Cornelius Tracy, were in partnership in the business of unlawfully selling intoxicating liquors; that the defendant Tracy furnished the financial credit on which said business was founded, stored the liquors belonging to said partnership in the place alleged in the eighth count of the information, assisted in caring for said liquors, and received his share of the profits of said business.

"You are instructed that where a person acts in conjunction with another as a partner in the business of selling intoxicating liquors in violation of the law, the said person may be prosecuted and punished for said unlawful sales made by his said partner the same as though he had personally made said sales; and if said person kept and stored said intoxicating liquors for any of the unlawful purposes mentioned in Instruction No. 6, while his said partner made unlawful sales from the intoxicating liquors so stored and kept, then the party so storing and keeping said liquors would be guilty of maintaining a common nuisance.

"Therefore, if you find from the evidence beyond a reasonable doubt that the defendant was in partnership with the witness Bone Dykes in the unlawful sale of intoxicating liquors, and that the witness Bone Dykes made the sales, or any of them, as charged in the information, or if you find that the defendant

either for himself or in conjunction with the witness
Bone Dykes maintained a common nuisance at the
place alleged in the information, then you would be
justified in returning a verdict of guilty upon which-
ever count or counts you believed him to be guilty."

We think the instructions fairly presented all the
law respecting a partnership that was involved upon
the facts in evidence, and that the jury were not left
in the dark as to what would constitute the appellant
and Dykes partners in the transactions referred to.
There was no request for a more definite instruction.

(2) It is urged that the court erred in permitting
the jurors to separate without admonishing them not
to form or express an opinion in the case until it was
finally submitted to them. While the charge omits the
statutory requirement, we would not feel warranted in
holding the omission a sufficient ground for reversal, in
view of the admonition which was given and in which
the jurors were told to be very careful not to discuss
the case with anyone or among themselves, and the
previous admonitions which it is presumed from the
record were given when the jurors were permitted to
separate at other times during the progress of the
trial, and in view of the further fact that appellant and
his counsel though present did not call the court's at-
tention to the omission.

(3) The claim of error which presents a question of
more serious importance is that it was an abuse of
judicial discretion to postpone the cause in the midst
of the trial, permit the jurors to separate, and
thirty-three days thereafter resume the trial over the
objection of appellant.

We are impressed with the force of the contention
that there was such a departure from the orderly pro-
cedure which should be followed in the conduct of a
criminal case as to require the judgment to be set aside
and a new trial ordered. Permitting the jurors to
separate after they had heard a substantial part of the

evidence for the state and, over the objections of appellant, resuming the trial thirty-three days afterwards could hardly be otherwise than prejudicial to his rights. It was long the almost universal practice not to permit the jurors to separate for any purpose until they had returned their verdict and been discharged. Many of us have recollections of seeing juries marched in charge of a sworn bailiff to and from the court house and the tavern. More liberal views as to what the furtherance of justice demands in court procedure and consideration for the convenience and comfort of jurors have quite generally caused the old practice in this respect to fall into desuetude. In the trial of important criminal cases or in a civil cause it is always within the discretion of the court, upon its own initiative or upon a proper showing, whenever it is deemed necessary in the furtherance of justice, to order the jurors kept together until the verdict. There was no attempt in the present case to show nor is it claimed that any improper influence was brought to bear upon any member of the jury during their separation. Nor do we think any presumption of improper influence should be indulged. Wholly aside from any probability of the verdict having been affected by outside influences, the lapse of thirty-three days between the introduction of the state's evidence and that of appellant rendered it at least doubtful whether the jury could properly determine its weight. The state now contends that its case was naturally weakened by the lapse of time and that the postponement must have inured to the benefit of the appellant. On the other hand, he insists that the jurors, after hearing twelve witnesses for the state testify against him, could not, despite the admonition of the court, refrain during all that period from recalling and giving thereto such weight as to leave in their minds such a settled belief in his guilt as would require the strongest kind of evidence to overcome. We think that a fair and impartial

trial, which every person charged with a crime is entitled to, was denied appellant. After such an interval the jury would be unlikely to recall the appearance and demeanor of the witnesses for the state, while the impressions gathered from what the witnesses testified to might remain as more or less settled convictions. A somewhat similar situation arose in *Butler v. McMillen, Co. Clerk,* 13 Kan. 385. That was a civil action involving the validity of a county-seat election. After the trial was begun and witnesses for both sides had been examined the case was continued because the term of court was about to end, and the trial was not resumed until one year afterwards. While the period of time which elapsed was much longer than in the present case, it was a trial by the court without a jury. The same question involved here having been raised, the procedure was held erroneous and a new trial was ordered. It was ruled in the syllabus: "A trial should be completed, so far at least as the introduction of testimony is concerned, at the term at which it is commenced." (Syl. ¶ 1.) In the opinion Justice Brewer, speaking for the court, said:

"We think this objection of the defendant in error well taken. We do not understand that a case can be tried piecemeal in this way. Here two terms and a year's time intervene between the term at which part of the testimony is heard and that at which the remainder is introduced. If the case were tried before a jury, the impropriety would be more apparent, in view of the difficulty of securing the reattendance of the same triers; but the impropriety would not be more real, where a great length of time intervenes, as in this case. Undue weight will very likely be given to the testimony offered at one of the terms. The case is not presented to the consideration of the court in a symmetrical and well-proportioned manner. Impressions settle into convictions, while the manner of witnesses, and much of the *minutia* which gave rise to those impressions, are forgotten. It frequently happens that the testimony on the one side, even when not contradicted, is explained or qualified by that on the

other, and, when so explained or qualified, carries a very different meaning from that which it conveys by itself alone. If this explanation or qualification is not heard for a year, it will often go but little ways towards changing the effect first produced on the mind." (p. 390.)

In the case of *In re Scrafford, Petitioner, &c.,* 21 Kan. 735, the petitioner sought release by habeas corpus after conviction of the crime of forgery. The trial, which had been commenced at one term of court in December, was in progress at the close of the term on Saturday. On that day the court directed the jury to return into court on Monday, which was the first day of the regular January, 1879, term, when the trial was resumed, the verdict of guilty being returned several days later and during the January term. The court held that at most there had been only a mistrial and therefore the writ was denied.

The judgment is reversed and the cause remanded for another trial.